IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SAMUEL DAVID FERRER AVILA<br>CESAR JAVIER CHOURIO MORANTE<br>HECTOR ENRIQUE ESCORIHUELA GIL<br>YHONLESTER WUILER MANUEL DA SILVA QUINTERO | Criminal No. 22-301<br>Criminal No. 22-299<br>Criminal No. 22-235 |

## SENTENCING MEMORANDUM

AND NOW comes the United States of America by its attorneys, Troy Rivetti, Acting United States Attorney for the Western District of Pennsylvania, and Jeffrey R. Bengel, Assistant United States Attorney for said district, and respectfully files this sentencing memorandum.

## FACTUAL AND PROCEDURAL BACKGROUND

This case involves a scheme to defraud that specifically targeted elderly victims in Western Pennsylvania and other states across the country. For the victims, the scheme began when they received a phone call from a member of the conspiracy, impersonating one of their grandchildren. The "grandchild" told the victim that they had been detained as a result of a reckless driving accident, in which they had collided with a car driven by someone else—in many cases, a pregnant woman. Fortunately, the "grandchild" continued, an attorney had agreed to represent them. Another conspirator, now impersonating the attorney, spoke with the victim, informing them that their grandchild needed money—usually thousands of dollars—in order to be released from jail. Cash was preferable, the attorney continued, and for the victim's convenience, the "attorney" could send a bail-bondsman directly to the victim's home to retrieve it. But it was important, explained the "attorney," that the victim abide by the "gag order" on the case. The victim should not tell anyone—their spouse, their children, or any inquisitive bank tellers—about their grandchild's

detention and the thousands of dollars that they were about to pay toward their bond. When another member of the conspiracy, now impersonating a bail-bondsman, arrived at the door, most victims simply handed over the money.

This scheme was designed to intentionally prey upon the love and concern that grandparents feel for their grandchildren. The emotional distress caused to the victim was not an unintentional by-product of the fraud; it was an essential piece. By causing the victim to worry about the safety of their grandchild, placing pressure on them, and isolating them through the "gag order," the members of the scheme could induce them to part with thousands, and sometimes tens-of-thousands, of dollars. The more distressed the victim, the more likely they were to pay. Victims interviewed as part of this investigation described feeling embarrassed, taken advantage of, less trusting, and less safe.

The scheme was executed by an international conspiracy. The calls to the victims were made from call centers, primarily located in Montreal, Quebec. There, conspirators reading from scripts—some playing the "grandchild" while others, known as "closers," played the "attorneys"—frightened the elderly victims into paying the "bond." At the same time, Stefano Zanetti, a Canadian citizen living in Panama, was arranging for the pickup of the funds from the victims' homes in the United States. Once picked up by the "bondsmen," the funds would be delivered to the "safehouse," another conspirator who was tasked with collecting the victim funds until they could be converted to cryptocurrency and transferred to Panama or other international locations. Using Signal, the encrypted messaging application, Zanetti sent instructions to the conspirators in the United States. In some messages, Zanetti provided the name of a victim, their home address, and the amount of money that the "bondsman" was supposed to collect. Other instructions were more focused on *how* the "bondsmen" were supposed to collect the money. These included directions to drive past the victims' homes before approaching, park cars blocks away where they could not be seen, use aliases when going to the victims' doors, look for cameras, and avoid gated

communities. To assist with the logistics and laundering of victim funds, Zanetti worked with other conspirators located in Panama, including Samuel David Ferrer Avila and Cesar Javier Chourio Morante.

In August and September 2021, two "bondsmen" connected to Zanetti's organization were arrested attempting to pick up money from elderly victims of the scam. The first, Isaac Falak, was arrested in the state of Idaho in August 2021. Falak's travel to the United States from Panama was associated with the email address of a third person who, in turn, had engaged in financial transactions with Samuel Ferrer Avila. After obtaining a search warrant for a phone seized from Falak, federal investigators discovered a confirmation email indicating that Falak's Idaho travel had been managed in part by someone named Cesar Chourio—now identified as Cesar Chourio Morante. The second "bondsman," Derek Allman, was arrested by police in Walton County, Georgia. Inside his phone, agents discovered that Allman had been taking directions from a Panamanian phone number associated with the Signal account "Loyalty." The user of that account was subsequently identified as Stefano Zanetti.

During the last week of September 2021, Roderick Feurtado, Tarek Bouanane, and Roberto Gutierrez arrived in Pittsburgh to carry out the scheme. Bouanane and Gutierrez were the "bondsmen," who picked up thousands or tens of thousands of dollars in cash directly from the elderly victims at their homes. Pittsburgh was the first stop for Gutierrez as a member of the conspiracy. Bouanane, on the other hand, had already picked up money from victims in New Hampshire and dropped $25,000 of the stolen cash in New York City. Those funds had been converted to cryptocurrency in form of USDT and sent to an account belonging to Samuel Ferrer Avila. Feurtado was the "safehouse." In that role, he helped direct the activities of the "bondsmen," collected the cash that they had stolen from the elderly victims, and arranged to transfer it to other members of the conspiracy. Feurtado had recruited both Bouanane and Gutierrez as members of the conspiracy and had direct ties to its managers in Panama, including

Stefano Zanetti and Samuel Ferrer Avila. Zanetti, using the Signal account "Loyalty," and Ferrer Avila, using the Signal account "Salvatore99," oversaw the operation from Panama. Voice messages sent from Loyalty suggest that, for at least part of that period, Zanetti and Ferrer Avila worked together in person.

On September 29, 2021, Bethel Park and Upper St. Clair Police arrested Gutierrez at the door of a victim, from whom he'd been trying collect $30,000 in cash. Later that evening, the Pennsylvania State Police located Feurtado at a hotel near the airport, in possession of more than $220,000 in victim money. And, the following day, they found Bouanane at a hotel on the Northshore—also in possession of thousands of dollars in cash. When agents searched Feurtado's phone, they discovered WhatsApp messages between Feurtado and Ferrer Avila. In a message following Gutierrez's arrest, Feurtado sent Ferrer Avila a link to the Commonwealth of Pennsylvania's "inmate locator," an online tool for finding the location of a detained individual.

The arrests of Feurtado, Bouanane, and Gutierrez did not put an end to the conspiracy. While pursuing the case against Feurtado, Bouanane, and Gutierrez, agents learned that another "bondsman," Adrian Orozco Perez, had been arrested on February 28, 2022 in Walton County, Georgia—the same county where Derek Allman had been previously arrested with a contact for "Loyalty" in his phone. When agents began investigating Orozco Perez, they learned that, during the month of February 2022, he had also traveled to both Western Pennsylvania and Tennessee, during periods when local seniors had been losing money to the scam. Orozco Perez's phone contained evidence connecting him to conspirators in the United States and abroad. One of his contacts was for Cesar Chourio, a man pictured riding a jet ski apparently identical to one on which Stefano Zanetti had been previously photographed.

Orozco Perez also had as contacts numbers attributed to Yhonlester Da Silva Quintero and Hector Escorihuela Gil, two individuals that agents already suspected of having traveled to Pittsburgh to execute the scam. Escorihuela Gil was saved in Orozco Perez's phone under a

Spanish word related to that for "vault." Flight, hotel, and rental car records associated with Da Silva Quintero and Escorihuela Gil placed them in Pittsburgh, Georgia, and Tennessee during the periods when the scam was active those locations. So too did the historical cell-site information associated with their phone numbers. More than a week after the arrest of Orozco Perez at a victim's door, yet another courier, Nelson Guzman-Gonzalez, was arrested in Georgia attempting to pick up cash from a victim. The numbers belonging to Escorihuela Gil and Da Silva Quintero were saved in Guzman-Gonzalez's phone and had connected to cell-towers in the area. When investigators later searched devices seized from Da Silva Quintero and Escorihuela Gil incident to their arrests, they found evidence indicating that Da Silva Quintero was a "bondsman" and Escorihuela Gil was a "safehouse." In particular, the phone belonging to Da Silva Quintero contained a graphic of an animated figure superimposed with his face, in a vehicle chase with police. The phone belonging to Escorihuela Gil contained photos of bulk cash and notes about collections, similar to those kept by Feurtado. Some of this evidence related to cash pickups from victims in New York, as early as December 2021.

As they moved around the country executing the scheme, Orozco Perez, Da Silva Quintero, and Escorihuela Gil had received instructions from Zanetti, using the new Signal account moneyyyyyyy; Ferrer Avila, using the new Signal account Luciano$ (but the same avatar as had been attached to the Salvatore99 account); and Chourio Morante, using the Signal account Floyd Markc. While picking up money from victims in Pittsburgh, Orozco Perez had sent money directly to Chourio Morante in Panama, via Western Union. Escorihuela Gil's phone revealed later conversations with Chourio Morante on the Floyd Markc Signal account about a "bondsman" named Custudio Gomes-Silva, who was arrested in August 2022 while trying to pick up cash from a victim in Kansas. Inside Gomes-Silva's phone, agents found recordings from Stefano Zanetti, sent from the Signal account moneyyy.

Feurtado, Bouanane, and Gutierrez—the individuals who targeted Pittsburgh victims in September 2021—have all been convicted of conspiracy to commit wire fraud in the Western District of Pennsylvania. Gutierrez pled guilty and received a sentence of 46 months of imprisonment. Feurtado and Bouanane were convicted at trial and received sentences of 120 months and 46 months of imprisonment, respectively. Orozco Perez, Da Silva Quintero, and Escorihuela Gil—the individuals who targeted Pittsburgh victims in February 2022—have similarly been convicted of conspiracy to commit wire fraud. Orozco Perez, who was also convicted of money laundering, received a sentence of 36 months of imprisonment. Escorihuela Gil and Da Silva Quintero are scheduled for sentencing on July 11, 2025 and July 30, 2025, respectively.

Finally, in August 2023, Zanetti, Ferrer Avila, and Chourio Morante were extradited from Panama to the United States. All three have pled guilty to conspiracy to commit wire fraud and conspiracy to commit money laundering. Ferrer Avila and Chourio Morante are scheduled for sentencing on July 18, 2025.

## ARGUMENT

The Court shall impose a sentence sufficient but not greater than necessary to comply with the purposes set forth by Congress in 18 U.S.C. § 3553(a). First, the Court's sentences must account for the seriousness of, and provide just punishment for, the offense. As the Court has already recognized in sentencing related defendants, this is a very serious offense that involves the exploitation of elderly victims and the love that they feel for their grandchildren. To induce the victims to part with thousands or tens-of-thousands of dollars, members of the conspiracy lied to, frightened, isolated, and pressured them. The conspirators arranged to take the money from the victims in person at their addresses, thereby making them feel unsafe in their homes. And they did all that out of greed—simply to make money for themselves and their conspirators. This is a serious offense that warrants a serious punishment.

Second, the sentences in this case should afford adequate deterrence to criminal conduct. Every "bondsman" and "safehouse" charged in these related cases has maintained that they did not know the substance of the communications made directly to the elderly victims. Even if that is the case, each defendant knew, or at the very least willfully avoided knowing, that he was engaged in a criminal conspiracy stealing cash from the elderly. The sentences in these cases should be serious enough to deter individuals who calculate that they could make money through elder fraud but escape punishment by claiming ignorance about the nature of their actions. Individuals considering this type of conduct must understand that the legal consequences are not worth the risk. That is even more important where, as here, each defendant had opportunities to withdraw from the conspiracy after learning of its nature. Ferrer Avila and Chourio Morante remained members of the conspiracy, despite the arrests of numerous "bondsmen" and "safehouses." Da Silva Quintero and Escorihuela Gil continued in their conduct notwithstanding the arrest of Orozco Perez. Escorihuela Gil appears to have been connected to a "bondsman" as late as August 2022.

Third, the Court should remain cognizant of "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). The investigation and prosecution of this elder fraud in the Western District of Pennsylvania has now resulted in the federal indictment and conviction of nine individuals. In determining the sentence of each defendant, the Court should consider the role of each defendant in the conspiracy, the duration of their participation, and the promptness with which they accepted responsibility.

Finally, the sentences in these cases should provide for restitution by Ferrer Avila, Chourio Morante, Escorihuela Gil, and Da Silva Quintero. The United States requests that restitution be ordered to the following victims in the amounts, and from the defendants, identified in the table below:

| Victim | Location | Amount | Defendants |
|---|---|---|---|
| B.A. | Oyster Bay, NY | $61,000 | All |
| H. | New Rochelle, NY | $17,000 | All |
| R.S. | Ebensberg, PA | $30,000 | Ferrer Avila, Chourio Morante |
| P.C. | Sandy Springs, GA | $16,000 | Ferrer Avila, Chourio Morante, Escorihuela Gil |
| J.S. | Kennesaw, GA | $6,000 | Ferrer Avila, Chourio Morante, Escorihuela Gil |
| P.S. | Carrollton, GA | $18,100 | Ferrer Avila, Chourio Morante, Escorihuela Gil |
| M.W. | Milton, GA | $18,000 | Ferrer Avila, Chourio Morante, Escorihuela Gil |
| M.A.S. | Forsyth, GA | $20,000 | Ferrer Avila, Chourio Morante, Escorihuela Gil |
| J.S. | Cobb County, GA | $9,050 | Ferrer Avila, Chourio Morante, Escorihuela Gil |
| S.A. | Hookstown, PA | $20,000 | All |
| J.O. | Scottsdale, PA | $8,000 | Ferrer Avila, Chourio Morante, Escorihuela Gil |
| J.P. | Crescent, PA | $20,000 | Ferrer Avila, Chourio Morante, Escorihuela Gil |
| L.N. | Mars, PA | $18,000 | Ferrer Avila, Chourio Morante, Escorihuela Gil |
| B.G. | Irwin, PA | $7,500 | All |
| B.B. | Dubois, PA | $8,500 | Ferrer Avila, Chourio Morante, Escorihuela Gil |
| M.D. | Indiana, PA | $5,000 | Ferrer Avila, Chourio Morante, Escorihuela Gil |
| W.B. | Homer City, PA | $12,000 | Ferrer Avila, Chourio Morante, Escorihuela Gil |
| T.B. | Denver, PA | $14,100 | Ferrer Avila, Chourio Morante, Escorihuela Gil |
| D.H. | Brentwood, TN | $12,000 | Ferrer Avila, Chourio Morante, Escorihuela Gil |
| F.H. | Wartrace, TN | $12,000 | Ferrer Avila, Chourio Morante, Escorihuela Gil |
| W.C. | Nashville, TN | $6,000 | Ferrer Avila, Chourio Morante, Escorihuela Gil |
| G.M. | Knoxville, TN | $18,000 | Ferrer Avila, Chourio Morante, Escorihuela Gil |

| Victim | Location | Amount | Defendants |
|---|---|---|---|
| E.G. | Lawrenceville, GA | $122,300 | Ferrer Avila, Chourio Morante |
| R.H. | Putnam County, GA | $26,000 | Ferrer Avila, Chourio Morante, Escorihuela Gil |
| B.P. | Sandy Springs, GA | $20,000 | Ferrer Avila, Chourio Morante, Escorihuela Gil |
| D.B. | Leavenworth, KS | $12,000 | Ferrer Avila, Chourio Morante, Escorihuela Gil |
| L.B. | Pleasant Hill, MO | $11,000 | Ferrer Avila, Chourio Morante, Escorihuela Gil |

This case involves an international conspiracy to defraud vulnerable members of the community, in Pittsburgh and elsewhere. Although they played different roles, each defendant joined and contributed to the exploitation of the scheme's many victims. The United States respectfully respects that the Court impose sentences that reflect that fact.

Respectfully submitted,

TROY RIVETTI
Acting United States Attorney

*s/Jeffrey R. Bengel*
JEFFREY R. BENGEL
Assistant U.S. Attorney
Pittsburgh, Pennsylvania 15219
DC ID No. 1018621