IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA, CRIMINAL No: 22cr301

VS.

SAMUEL FERRER AVILA, Electronically Filed

Defendant.

**SENTENCING MEMORANDUM**

AND NOW, comes the Defendant, Samuel Ferrer Avila, by and through his attorney, PATRICK K. NIGHTINGALE, ESQUIRE, who brings the within Sentencing Memorandum and in support thereof sets forth the following:

1. Defendant, Samuel Ferrer Avila (hereafter Defendant) hereby incorporates all prior pleadings in this matter.

2. Defendant's sentencing in this matter is scheduled for July 18, 2025, at 10:00 am before this Honorable Court.

3. On May 22, 2024, Defendant pled guilty to Counts One and Two of the indictment, charging him with Conspiracy to Commit Wire Fraud and Conspiracy to Commit Money Laundering, respectively.

4. Defendant's advisory sentencing guidelines range is 63 to 78 months incarceration based upon a criminal history category of I and an offense gravity score of 26.

5. The Government, in its Sentencing Memorandum, has advised the Court that Defendant is jointly and severally responsible for restitution to the victims in this matter. Defendant does not contest that he is responsible to for restitution in this matter.

6. Defendant has remained incarcerated since his arrest in Panama in August, 2023. Defendant has an immigration detainer lodged against him. Considering the current climate relative to immigration enforcement, within counsel believes and, therefore, avers that ICE will move with alacrity to remove Defendant once he has served his sentenced in the instant matter.

**THE SENTENCING FACTORS SET FORTH IN 18 U.S.C. §3553 SUPPORT A SENTENCE BELOW THE ADVISORY GUIDELINES RANGE**

7. Paragraphs 1 through 6 are incorporated as though set forth at length herein.

8. Pursuant to *Booker v. United States,* 125 S.Ct. 738 (2005)*,* the Sentencing Guidelines are merely advisory, and a sentencing court shall be guided by the factors set forth in 18 U.S.C. 3553(a). Section 3553(a) places on equal footing the sentencing guidelines, the nature and circumstances of the offense and history of the defendant, the need for the sentence reflecting the seriousness of the offense, the need to protect the public, adequate deterrence, and effective correctional treatment for a defendant. Although these factors overlap with the grounds for potential guidelines departures, a court is not precluded from considering these factors instead of or in addition to those potential grounds for departures. *See United States v. King*, 454 F.3d 187, 194-95 (3d Cir. 2006.) Following, *United States v. Booker*, 543 U.S. 220 (2005), the district court must impose a sentence in accordance with the factors set forth in 18 U.S.C. § 3553(a), of which the "advisory United States Sentencing Guidelines [the "guidelines"] are one factor to consider." *United States v. Cooper,* 437 F. 3d 324 (3d Cir. 2006). Post-Booker, "discretionary sentences not based on some specific guidelines departure [are] known as 'variances.'" *United States v. Vampire Nation*, 451 F. 3d 189, 195 fn. 2 (3d Cir. 2006). The district court must give meaningful

consideration to all of the section 3553 sentencing factors and state on the record logical reasons for the sentence that are consistent with the factors. *Id*. at 196.

9. The calculation of the correct guideline range is only the first step in the process of post-Booker sentencing. As the Third Circuit set forth in *United States v. Tomko*, 498 F.3d 157 (3d Cir. 2007):

> Our post-Booker precedent instructs district courts to follow a three-step sentencing process: (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before Booker; (2) in doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre- Booker case law, which continues to have advisory force; and (3) finally, they are required to "exercise [their] discretion by considering the relevant [3553(a)] factors," *United States v. Cooper*, 437 F.3d 324, 329 (3d Cir. 2006), in setting the sentence they impose regardless of whether it varies from the sentence calculated under the Guidelines. See generally *United States v. King*, 454 F.3d 187 (3d Cir. 2006).

*Tomko,* 498 F.3d at 163 n.6.

10. The Third Circuit has also rejected the presumption of reasonableness for within guidelines sentences, *United States v. Cooper*, 437 F.3d 324, 331 (3d Cir. 2006); therefore, the court may vary from the guidelines for reasons which, pre-Booker, would not have supported a departure. *See, e.g*., *United States v. Colon*, 474 F.3d 95, 99 (3d Cir. 2007) (a district court need not rely on departure factors to sentence a defendant outside the guidelines range).

11. In *Rita v. United States*, 551 U.S. 338 (2007), the Supreme Court held that "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." Moreover, a guidelines sentence is not a presumptive sentence, "[o]therwise, as several Courts of Appeals have concluded, we would come close to restoring the mandatory nature of the guidelines excised in Booker." *United States v. Cooper*, 437 F.3d at 331. The Court must consider each relevant §3553(a) factor and reasonably apply the factors to the circumstances of the case. Id. at 329-30. The Court need not make findings as to each factor "if the record makes

clear the court took the factors into accounts at sentencing," *id*., but must address any meritorious ground raised by the prosecution or defense. *See also United States v. Manzella*, 475 F.3d 152 (3d Cir. 2007).

12. In *Gall v. United States*, 552 U.S. 38 the Court rejected any requirement of "extraordinary circumstances" as a justification for a downward variance from the guidelines' range as "not consistent with our remedial opinion in *United States v. Booker*." Slip. Op. at 6-7, (citation omitted). The Court explained that this approach "come[s] too close to creating an impermissible presumption of unreasonableness for sentences outside the Guideline range." *Id*. at 8. Requiring "extraordinary circumstances" to justify a below guidelines sentence would impermissibly elevate the guidelines above the other factors articulated in 18 U.S.C. § 3553. The Court in *Gall* also emphasized the broad discretion of the district court in imposing sentence. *Id*. at 598-97. "[T]he district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party, and then . . . make an individualized assessment based on the facts presented." *Id*.

13. Ultimately, the Court's task is to determine a sentence that is sufficient, but not greater than necessary, to comply the purposes set forth in 18 U.S.C. § 3553(a).

14. Section 3553(a) and (b) provides that the sentence imposed should:

> **(a) Factors to be considered in imposing a sentence.**--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to
> be imposed, shall consider--
> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed—
>> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> **(B)** to afford adequate deterrence to criminal conduct;
>> **(C)** to protect the public from further crimes of the defendant; and

> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> **(3)** the kinds of sentences available;
>
> **(4)** the kinds of sentence and the sentencing range established for—
>
> **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines-**(i)** issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and **(ii)** that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or
>
> **(B)** in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);
>
> **(5)** any pertinent policy statement--
>
> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> **(7)** the need to provide restitution to any victims of the offense.

*Id.*

15. Turning to the instant matter, Defendant believes and, therefore, avers that the sentencing factors set forth in §3553 support the Defendant's request for a sentence of time served.

*The nature and circumstances of the offense and the history and characteristics of the defendant*

The Government, in its Sentencing Memorandum, sets forth the scope of the Zanetti operation/conspiracy and Defendant's role therein. Defendant readily acknowledges that his offense conduct was very serious and resulted in significant financial hardship for the innocent victims of the Zanetti operation/conspiracy and his role therein.

Defendant's Mitigation Report is attached hereto and made a part hereof. Counsel, therefore, will summarize the "highlights" of Defendant's background and, most importantly, how he became ensnared with the Zanetti operation/conspiracy.

As set forth in the Mitigation Report, Defendant's early life was traumatic:

> Samuel's adolescence occurred during a period of significant civil and political unrest in Venezuela. Like many families, in escaping dictatorships and war, the family faced and overcame food insecurity, a systemic

> healthcare failure, and threats from organized criminal groups. Still, his family prioritized hard-work, faith, and education, and he grew into a productive and intelligent young adult. As a child, his dream was to become an aviator, but the dream was interrupted upon fleeing the war-torn Venezuela.

As Defendant and his family began to rebuild their life in Panama Defendant developed an interest in cryptocurrency. This, alas, proved his downfall once he met Stefano Zanetti.

Defendant's interest in cryptocurrency led him to produce e-commerce instructional videos as he began to establish his own career as a crypto trader and investor. Links to some of his instructional videos are set forth herein.[1] It was in this context that Stefano Zanetti approached Defendant. What Defendant believed was a legitimate business opportunity turned in to a nightmare for he and his family. Zanetti quicky exploited Defendant's naivety, trapping via violent threats in to, essentially, an involuntary servitude to repay Zanetti for alleged missing currency from crypto transactions. Zanetti's own wife and stepson ultimately assisted Defendant in fleeing from Panama to Columbia. Zanetti began to stalk and harass his family in Panama. They were forced to flee Panama, returning to Venezuela before being granted humanitarian parole in the United States. Their future, however, is in question as the humanitarian parole program has been terminated.[2] In summation:

> This coercive dynamic—involving psychological manipulation, threats to loved ones, and real displacement—forms a critical backdrop to Samuel's offense. His participation was not driven by greed, but by fear and survival instincts common among young adults experiencing traumatic stress.

As set forth in the Mitigation Report, Defendant has made the most out of his period of incarceration in a Country where he does not speak the language. The majority of his pre-sentence incarceration was spent at the Butler County Prison where he read voraciously, consuming dozens of books with subjects ranging from psychology, history, philosophy, and personal development. He has expressed a strong desire to help youth at risk of exploitation.

*The need for the sentence imposed (seriousness, protection, deterrence, rehabilitation)*

As acknowledged above, Defendant's offense conduct is serious and a sentence of incarceration is certainly warranted. Defendant submits that a sentence of time served is adequate to both protect the public and to deter Defendant from any future criminality. As set forth herein and in the attached Mitigation Report, Defendant was preyed upon by Zanetti and participated in the Zanetti operation/conspiracy under actual threats of violence that ultimately led to both he and

---

[1] https://youtu.be/olebZIXPycg?si=brjLQI3Bk3GTyI0Y

https://youtu.be/xOy9MhXhkDE?si=Ej2y1ibxP0nd8qrV

https://vm.tiktok.com/ZMSX8kdBx/

https://vm.tiktok.com/ZMSX82CdE/

[2] https://www.dhs.gov/news/2025/06/12/dhs-issues-notices-termination-chnv-parole-program-encourages-parolees-self-deport

his family fleeing Panama. Relative to rehabilitation, Defendant has engaged in significant introspection and rehabilitation while incarcerated. He trained himself as a cryptocurrency trader/investor and does not require vocational training from the BOP. Nor does Defendant require any type of drug rehabilitation via the RDAP program.

*The kinds of sentences available*

Defendant's sentence falls within Zone D of the United States Sentencing Guidelines and therefore a sentence of imprisonment is called for.

*The kinds of sentences and the sentencing range*

Defendant respectfully requests this Court sentence him to a period of time served.

*Any pertinent policy statement*

Defendant submits that a downward departure is warranted pursuant to USSG §5K2.12:

> If the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense, the court may depart downward. The extent of the decrease ordinarily should depend on the reasonableness of the defendant's actions, on the proportionality of the defendant's actions to the seriousness of coercion, blackmail, or duress involved, and on the extent to which the conduct would have been less harmful under the circumstances as the defendant believed them to be. Ordinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency. Notwithstanding this policy statement, personal financial difficulties and economic pressures upon a trade or business do not warrant a downward departure.

*Avoiding unwarranted sentencing disparity*

Defendant submits that a sentence of time served will not create any unwarranted sentencing disparity.

*Restitution*

Defendant acknowledges his responsibility for restitution in this matter and does not contest the restitution table set forth in the Government's Sentencing Memorandum.

*Conclusion*

Defendant respectfully requests this Court sentence him to a period of time served.

Respectfully Submitted,

/s/ *Patrick K. Nightingale*

Patrick K. Nightingale, Esquire

Attorney I.D. # 76015
Attorney for Defendant